Michael T. JOHNSON, Appellant

v.

DISTRICT OF COLUMBIA, Appellee.

No. 03–CT–1016.

District of Columbia Court of Appeals.

Argued March 30, 2004.

Decided July 8, 2004.

Morton Hollander, Bethesda, MD, for appellant. Robert H. Hollander, appointed by the court, was on the brief for appellant.

Sidney R. Bixler, Assistant Corporation Counsel, with whom Robert J. Spagnoletti, Corporation Counsel, Edward E. Schwab, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Supervisory Corporation Counsel, were on the brief, for appellee.

John P. Mannarino, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Assistant United States Attorney, were on the brief, for the United States as amicus curiae.

Before TERRY and RUIZ, Associate Judges, and NEBEKER, Senior Judge.

TERRY, Associate Judge:

Appellant was charged by information with indecent exposure. In this interlocutory appeal, appellant contends that the trial court erred in denying his motion to dismiss the information.

During a search incident to his arrest for indecent exposure, the police recovered a small bag of marijuana from appellant's pocket. The United States Attorney (on behalf of the United States) charged appellant with possession of marijuana, and the Corporation Counsel (on behalf of the District of Columbia) charged him with inde-

cent exposure.[1] The prosecutions were not joined.

Appellant filed a motion to suppress the marijuana in the possession case, which the trial court granted after determining that there was no probable cause for the arrest. Some time later, during the Corporation Counsel's prosecution of the indecent exposure charge, appellant filed a motion to dismiss the information on the ground of collateral estoppel. Appellant asserted in his motion that the District was collaterally estopped from "relitigating" the indecent exposure charge because the court had previously found that he had been arrested without probable cause. The court denied appellant's motion, concluding that the District and the United States were not in privity.

On appeal Johnson makes four arguments. First, he asserts that the "common law" doctrine of collateral estoppel "stands on its own as a fundamental and independent principle precluding, in a second criminal prosecution, re-litigation of the same issue decided in favor of the same defendant in an earlier prosecution." As an alternative to that argument, appellant contends that "[t]he Collateral Estoppel Doctrine ... embraced and incorporated within the Fifth Amendment's guarantee against Double Jeopardy," bars the District's prosecution. Next, he argues that the requirements for collateral estoppel were met because the District and the United States "were in privity with each other." Finally, he argues that the District is now collaterally estopped from trying him for indecent ex-

posure because it could have participated in the United States' prosecution of the possession charge but chose not to do so. We do not resolve any of the issues that appellant raises. Instead, we hold, on the authority of *Jones v. United States,* 669 A.2d 724 (D.C.1995), that we do not have jurisdiction to evaluate the merits of appellant's claims. *Jones* requires the occurrence of a "jeopardy-attaching" event, *id.* at 729, before we can exercise jurisdiction over a collateral estoppel claim raised in an interlocutory pre-trial appeal. Since jeopardy did not attach during the suppression hearing in the marijuana possession case, we must dismiss this appeal for lack of jurisdiction.

I

Appellant was arrested for indecent exposure after two police officers allegedly saw him expose himself in an alley behind the 500 block of H Street, N.E. During a search incident to his arrest, the officers found a green ziplock bag containing marijuana in appellant's pants pocket. The next day two criminal informations were filed against him in the Superior Court. One, filed by the United States, charged him with possession of marijuana, a controlled substance;[2] the other, filed by the District of Columbia, charged him with indecent exposure.[3] Appellant filed a motion to suppress the marijuana, and after a hearing that motion was granted by Judge Rafael Díaz, who ruled that there was no probable cause for the arrest. The United States Attorney elected not to appeal from

1. *See* D.C.Code § 23–101 (2001), which outlines the division of prosecutorial authority in the District of Columbia between the United States Attorney and the Corporation Counsel.

While this appeal was pending, the title of the District's chief attorney was changed. The Corporation Counsel is now officially known as the Attorney General for the Dis-

trict of Columbia. *See* Mayor's Order No. 2004–92 (May 26, 2004), 51 D.C. Register 6052.

2. D.C.Code § 48–904.01(d) (2001).

3. D.C.Code § 22–1312(a) (2001).

that ruling and, shortly thereafter, dismissed the marijuana possession charge.

Several months later, when the indecent exposure case was approaching its trial date, appellant filed a motion to dismiss the information charging him with that offense, asserting that "the fundamental and dispositive issue decided by Judge Díaz in favor of the defendant is precisely the same issue the Government seeks to re-litigate, and to have re-decided ... in the present Indecent Exposure case." This motion to dismiss was based on both the "common law doctrine" of collateral estoppel and collateral estoppel as a component of the Fifth Amendment's guarantee against double jeopardy.[4] The District filed an opposition to appellant's motion, arguing (1) that appellant was never at risk of jeopardy on the indecent exposure charge during the suppression hearing in the marijuana case, (2) that the District and the United States were separate and independent parties, (3) that there was probable cause for the arrest, and (4) that

"[e]ven if the defendant's seizure was illegal, this does not deprive the government of the opportunity to prove the accused's guilt through introduction of evidence wholly untainted by the police misconduct."[5] The District cited *Randolph v. District of Columbia,* 156 A.2d 686, 688 (D.C.1959), in support of its assertion that it was not the same party as the United States.[6] Judge Patricia Wynn denied appellant's motion to dismiss because she determined that the United States and the District were not in privity with each other, citing *Randolph.*[7] Appellant filed a timely notice of appeal.

## II

In this appeal, as in any other, we must ascertain at the outset whether we have jurisdiction to consider the merits of the case. If the proceedings below had involved the denial of a pre-trial motion to dismiss based on traditional double jeopardy grounds, we would have jurisdiction to

---

4. *See Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy"); *In re Katz,* 638 A.2d 684, 687 (D.C.1994) (same); *United States v. Smith,* 337 A.2d 499, 501–502 (D.C.1975) (same); *see also Copening v. United States,* 353 A.2d 305, 309 (D.C.1976) (collateral estoppel "generally is applicable only where there has been a conclusive prior resolution of the precise factual question presented in the subsequent proceedings").

5. On the last point, the District maintained:

 Just because an arrest is unlawful or unauthorized, does not make the person immune from prosecution. . . .

 Here, none of the evidence concerning whether the defendant committed an indecent exposure offense is subject to suppression because it was obtained prior to any alleged illegal seizure.

6. The issue before the court in *Randolph* was whether *res judicata* precluded the District from prosecuting the appellant on a traffic

charge when he had previously been acquitted of homicide in a case prosecuted by the United States. The court concluded that *res judicata* did not bar the District's prosecution because "[t]he District of Columbia is a municipal corporation 'and may contract and be contracted with, sue and be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation ....'" 156 A.2d at 688 (citation omitted). The court went on to observe that "[t]he United States and the District of Columbia are not the same party nor in privity with each other." *Id.; see also District of Columbia v. Ray,* 305 A.2d 531, 534 (D.C.1973) (following *Randolph*).

7. Judge Wynn explained:

 ... I cannot find anything in the defense argument to persuade me that *Randolph* is not still good law, and to suggest that the mutuality of interest between the District of Columbia and the United States are such that there really is sufficient privity to allow collateral estoppel in this case.

evaluate appellant's ·claim by considering that denial as a "collateral order."[8] *See Abney v. United States*, 431 U.S. 651, 659, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (holding that an order denying a motion to dismiss on double jeopardy grounds falls under the collateral order exception to the final judgment rule and is therefore immediately appealable); *Green v. United States*, 584 A.2d 599, 601 (D.C.1991) ("[t]he denial of a motion to dismiss on double jeopardy grounds is immediately appealable" (citing *Abney*)).[9] Appellant's motion to dismiss, however, did not raise a traditional double jeopardy claim, but rather a double jeopardy-based collateral estoppel argument, which requires us to apply the special rule that we adopted in *Jones*.[10]

Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties." *Ashe v. Swenson*, 397 U.S. at 443, 90 S.Ct. 1189. In *Jones* this court "explicitly endorse[d]" a special rule for determining "whether it has jurisdiction to decide interlocutory appeals of collateral estoppel claims ...." 669 A.2d at 729. We held that "if a defendant claims that at *a prior jeopardy-attaching proceeding*, a fact was determined in such a manner that, if the determination were adopted in the instant proceeding, the double jeopardy clause would foreclose the prosecution, this court will have jurisdiction to review the question."[11] *Id.* (ci-

---

**8.** Under the collateral order doctrine, first announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–547, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), certain limited types of interlocutory orders are immediately appealable under an exception to the usual requirement that only final orders and judgments may be appealed. The doctrine is "strictly construed" in criminal cases:

> To come within this "narrow exception" ... a trial court order must, at a minimum, meet three conditions. First, it "must conclusively determine the undisputed question"; second, it must "resolve an important issue completely separate from the merits of the action"; third, it must "be effectively unreviewable on appeal from a final judgment."

*Stein v. United States*, 532 A.2d 641, 643 (D.C. 1987), *cert. denied*, 485 U.S. 1010, 108 S.Ct. 1477, 99 L.Ed.2d 705 (1988) (quoting *Flanagan v. United States*, 465 U.S. 259, 265, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984)).

**9.** With rare exceptions, the denial of a motion to dismiss based on a ground other than double jeopardy is not appealable as a collateral order under *Abney*. *See, e.g., United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982) (denial of motion to dismiss for prosecutorial vindictiveness is not immediately appealable); *United States v. MacDonald*, 435 U.S. 850, 860–861, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) (denial of

motion to dismiss for lack of a speedy trial is not immediately appealable).

**10.** In *Jones* the appellant claimed that the government was collaterally estopped from relitigating a charge that it had failed to prove by a preponderance of the evidence in a hearing to revoke supervised release. 669 A.2d at 726. We explained that because "jeopardy has never attached with respect to" the revocation hearing, the appellant's "claim of collateral estoppel therefore cannot derive from the constitutional prohibition on double jeopardy." *Id.* at 730. Consequently, we "dismiss[ed][the] collateral estoppel claim for lack of jurisdiction." *Id.*

**11.** From this premise we concluded:

> We therefore agree with Jones that *if* he were in actual danger of a double-jeopardy violation because jeopardy had previously attached, *and* a fact determined in the first proceeding would foreclose the subsequent prosecution, the collateral-order rule would provide us with jurisdiction to hear an interlocutory appeal on the collateral estoppel claim. [Because] jeopardy has never attached with respect to the present offenses, and Jones's claim of collateral estoppel therefore cannot derive from the constitutional prohibition on double jeopardy, we dismiss Jones's collateral estoppel claim for lack of jurisdiction.

*Jones*, 669 A.2d at 730 (emphasis in original; footnote omitted).

tations omitted; emphasis added). We stressed throughout our discussion that "jeopardy [must] have attached in the earlier proceeding if it is to be appealed on an interlocutory basis." *Id.* at 730; *see id.* at 728 ("for there to be a valid double jeopardy claim, initial jeopardy must have attached in a prior proceeding"); *accord, Serfass v. United States,* 420 U.S. 377, 393, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975) ("the fundamental principle [is] that an accused must suffer jeopardy before he can suffer double jeopardy"); *United States v. Sedgwick,* 345 A.2d 465, 469 n. 5 (D.C.1975) ("the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial" (citation omitted)), *cert. denied,* 425 U.S. 966, 96 S.Ct. 1751, 48 L.Ed.2d 210 (1976). Thus, under *Jones,* "a prior jeopardy-attaching proceeding," 669 A.2d at 729, is an essential prerequisite to immediate appealability under *Abney* and the collateral order doctrine. What that means in appellant's case is that our ability to evaluate the denial of his motion to dismiss in this appeal depends on whether or not jeopardy attached during the suppression hearing in the marijuana possession case.

 In general, "[j]eopardy attaches when the jury is sworn or, in a non-jury trial, when the judge begins to hear the evidence." *Purcell v. United States,* 594 A.2d 527, 532 (D.C.1991) (citations omitted); *accord, e.g., Serfass,* 420 U.S. at 391, 95 S.Ct. 1055 ("jeopardy does not attach until a defendant is put to trial before the

trier of facts, whether the trier be a jury or judge" (citation and internal punctuation omitted)). The suppression hearing conducted by Judge Díaz, however, was not a jeopardy-attaching event, as appellant acknowledges in his reply brief. "The only issue at a suppression hearing is whether the evidence at issue was properly obtained; such hearings 'do not involve guilt or innocence.'" *Allen v. United States,* 580 A.2d 653, 657 (D.C.1990) (citation omitted); *see United States v. Speed,* 388 A.2d 892, 893 (D.C.1978) ("the government is not required to prove the defendant's guilt upon a motion to suppress evidence, but only that the evidence was properly recovered"). "Without risk of a determination of guilt, jeopardy [did] not attach." *Serfass,* 420 U.S. at 391–392, 95 S.Ct. 1055. As a result, we lack jurisdiction to consider appellant's collateral estoppel claim in this interlocutory appeal.

 Appellant argues nevertheless that "the common law Doctrine of Collateral Estoppel, standing alone, calls on this Court ... to bar the pending District prosecution of Indecent Exposure." On this point our analysis is again guided and controlled by *Jones.* In *Jones* the government argued "that evidentiary collateral estoppel has no application in the criminal sphere unless it is compelled by the double jeopardy clause." 669 A.2d at 730 n. 4. Although we acknowledged that "[t]his court has not yet resolved the question whether collateral estoppel applies where there is no claim of double jeopardy,"[12] we

---

Appellant argues in his reply brief that "[t]here is no merit to the contention that the Collateral Estoppel form of Double Jeopardy may be invoked ... only where jeopardy earlier attached to the defendant in the first prosecution." For this proposition he cites *United States v. Byars,* 762 F.Supp. 1235 (E.D.Va.1991), and *People v. Wiedman,* 168 Ill.App.3d 199, 118 Ill.Dec. 776, 522 N.E.2d

231 (1988). Appellant's argument is not persuasive. First, those cases (unlike *Jones*) are not binding on us; second, even if they were, we do not read them as stating explicitly that collateral estoppel may apply even when jeopardy has not attached.

**12.** The federal circuits are not in agreement on this issue. *Compare DiGiangiemo v. Regan,* 528 F.2d 1262, 1264 (2d Cir.1975), *with*

went on to say that in "an interlocutory appeal, we are concerned ... *only* with collateral estoppel claims that implicate double jeopardy." *Id.* (emphasis added). As a result, "we [did] not reach the issue of the application in criminal proceedings of evidentiary collateral estoppel." *Id.* For the same reason, we do not and cannot reach appellant's common law collateral estoppel argument in this appeal.

## III

We hold that we have no jurisdiction to consider appellant's collateral estoppel claim in this *Abney*-based interlocutory appeal because jeopardy never attached at the suppression hearing in the marijuana case. We therefore dismiss the appeal. Our dismissal is without prejudice to appellant's raising his common law collateral estoppel claim (if it is still viable)—as well as any other relevant claims of error—on direct appeal from his conviction, provided of course that he is in fact convicted of indecent exposure. *See Jones,* 669 A.2d at 730.

*Appeal dismissed.*

*United States v. Bailin,* 977 F.2d 270, 274 n. 3 (7th Cir.1992); *Showery v. Samaniego,* 814 F.2d 200, 203 (5th Cir.1987); *and United States v. Hill,* 473 F.2d 759, 762 (9th Cir. 1972). All of these cases purport to be based on the Supreme Court decision in *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916), read in light of the subsequent decision in *Ashe v. Swenson.* At least one court, however, has characterized the *Oppenheimer* decision as "cryptic." *United States ex rel. Hubbard v. Hatrak,* 588 F.2d 414, 417 (3d Cir.1978), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1541, 59 L.Ed.2d 792 (1979).